LONIER *v.* ANN ARBOR SAVINGS BANK.[1]

TRIAL — MOTION FOR DIRECTED VERDICT — QUESTION OF FACT — SUBMISSION TO JURY.

Where the testimony of the principal witness, on direct examination, supported plaintiffs' theory that defendant bank discounted a note belonging to plaintiffs on an unauthorized indorsement of plaintiffs' agent, who absconded, and on cross-examination gave inconsistent testimony tending to support defendant's theory that it loaned money to witness, who paid it to the agent, there was a question for the jury as to which portion of the witness' testimony they would believe, which should have been submitted to them, notwithstanding a motion by both parties for a directed verdict.

[1] Rehearing denied September 10, 1908.

Error to Washtenaw; Kinne, J. Submitted May 4, 1908. (Docket No. 88.) Decided June 27, 1908.

Trover by Louis Lonier and William J. Hoffer, co-partners as Lonier & Hoffer, against the Ann Arbor Savings Bank. There was judgment for defendant on a verdict directed by the court, and plaintiffs bring error. Reversed.

*A. F. & F. M. Freeman*, for appellants.

*B. M. Thompson* and *Arthur Brown*, for appellee.

Moore, J. This suit was commenced by declaration containing a special count for moneys had and received and a count in trover for conversion of a note. The defendant pleaded the general issue. At the close of the testimony, the attorneys of each of the parties contended the judge should direct a verdict one way or the other. The trial judge directed a verdict in favor of defendant, and plaintiffs appeal, and assign error upon the direction of a verdict for defendant and the refusal of the court to direct a verdict for plaintiffs.

Plaintiffs are millers at Manchester, and defendant is a banking corporation at Ann Arbor. Mr. Heusel is a baker at Ann Arbor and was a customer of plaintiffs, who had in their employ as a traveling salesman one Donaldson, whose duty was to sell their goods. He was authorized by plaintiffs to settle accounts and receipt therefor. It is claimed by plaintiffs he had no authority to indorse, negotiate, or discount commercial paper given on settlement of an account with a customer of plaintiffs, but was directed to send such commercial paper home to plaintiffs, and, when cash was paid to him in settlement of an account, he was instructed to go to a bank, buy a draft, and mail the same to plaintiffs. It is claimed by plaintiffs that on April 4, 1906, Mr. Heusel was indebted to them in the sum of $367.29 for flour, and that on that date he settled this account, through Donaldson, by giving his

note, payable to the order of Lonier & Hoffer, for the above amount, and Donaldson receipted the bill by marking it " Paid," and took the note and discounted it and embezzled the funds. On the part of defendant, it is claimed that, instead of discounting the note for Mr. Donaldson, they loaned the money to Mr. Heusel, and that, if Mr. Donaldson did anything wrong in indorsing the note, it is a matter between the plaintiffs and Mr. Heusel. The testimony of the plaintiffs was to the effect that, while Mr. Donaldson was authorized to make collections and to receipt therefor, he was not authorized to indorse and discount notes given him in settlement of accounts.

Mr. Heusel was a witness. The material parts of his testimony are as follows:

" I knew one Donaldson, who was a traveling salesman or drummer for plaintiffs. About April 4, 1906, I was owing Lonier & Hoffer for some flour they had shipped from Manchester to me. I was owing them $367.29. I paid that account by giving my note. * * * I signed the note and delivered it to Mr. Donaldson, and when I delivered the note to him he receipted my bill. He marked my bill ' Paid,' and I considered that had closed the account. At the time that I delivered the note to Donaldson, he receipted the bill of Lonier & Hoffer, that this note was given for, and he took this note and went away. The note was made out at the Ann Arbor Savings Bank. I was down with him at that time. I never saw the note again, until I paid it. * * * You [Mr. Freeman] had been to see me, and had a talk with me about Donaldson, but I don't remember whether or not you told me not to pay that note to anybody except Lonier & Hoffer. * * * You told me that Donaldson had absconded. I heard that before you told me. When I paid the note, it was down at the bank, as much as I know. I cannot remember the date that I paid it. I cannot state whether or not Mr. Hoffer was over to see me about the time that I paid the note. I had been buying goods from Lonier & Hoffer for a number of years. Mr. Donaldson sold me the goods."

Cross-examination:

"*Q.* Had you ever paid this man before ?

"*A.* I did.  *  *  *

"*Q.* How many times?

"*A.* That I don't know.  I simply bought flour whenever I needed it, and paid for it whenever I had the money.  I had been doing that for a number of years, five or six years at least.  While I was with my brother we bought flour from this same man and paid him right along.

"*Q.* Did you ever pay anybody else for flour received from this agent up to that time?

"*A.* Since I have been alone I always settled with Donaldson, when he was here; but, when I was with my brother, he always attended to that.  Since I have been alone, I have always attended to it.

"*Q.* Did you ever settle any accounts with the plaintiffs or either of them during the time Donaldson worked for them?

"*A.* I always settled with Donaldson.

"*Q.* How did you settle with him?  Give him money?

"*A.* I gave him a note once or twice, and the last time I gave him checks.

"*Q.* And he took them to the bank and got the money, did he?

"*A.* That is the only time, I guess, those two last notes.
*  *  *

"*Q.* Can you remember the execution of a note of January 4, 1906, to Lonier & Hoffer for $590?

"*A.* I think so.  I think it was due in four months.  I was down to the bank with him.  I think Mr. Fritz made out the note, and I signed the note, and he signed the note and got the money.

"*Q.* Then a few months after that, on April 4, 1906, or three months, April 4th, Mr. Donaldson came again, didn't he, and at that time you went to the bank, and you gave a small note to take up a portion of the $590 note, and a new note for $367.29?

"*A.* Yes.

"*Q.* You signed the notes?

"*A.* Yes.

"*Q.* And Mr. Donaldson signed the notes?

"*A.* Yes.

"*Q.* And the money was laid over there on the table or desk right where Mr. Fritz sits, and he took the money and went away, did he not?  That $367.29?

"*A.* Of course, I have not seen that he took the money. At least I cannot remember it.  I did not get it.

"*Q.* So that if Mr. Fritz paid any money there, or anybody got any money, Donaldson got it?

"*A.* Donaldson got it; yes, sir.

"*Q.* On that date you gave two notes, you paid $400 in cash on the $590 note that reduced it to $190?

"*A.* Yes, and I gave a new note for that.

"*Q.* And you also borrowed enough money from Mr. Fritz to pay up this $367.29?

"*A.* Yes, sir.  *  *  *

"*Q.* I show you paper marked 'Exhibit D 1,' and ask you whether that is the discount slip that Mr. Fritz made out at the time you obtained that loan?

"*A.* Yes.  (Exhibit D 1 is as follows: 'Discount by Ann Arbor Savings Bank 4—4—1906.  For Sam Heusel, 6 per cent., $367.29, 6 per cent., $190.')

"*Q.* When this note for $367.29 came due, you paid it, did you, or about that time?

"*A.* Yes, in the course of business I paid it to the Ann Arbor Savings Bank."

Redirect examination:.

"*Q.* In answer to Mr. Brown, you said that upon April 4th you borrowed some money of the Ann Arbor Savings Bank.  You did not give any note that day running to the bank, did you?

"*A.* That I cannot remember.

"*Q.* You gave a note, just as you testified a little while ago, that was payable to the order of Lonier & Hoffer?

"*A.* Yes, sir.

"*Q.* And Donaldson wrote on the back of that note Lonier & Hoffer's name, didn't he?

"*A.* Yes.

"*Q.* And he took the note and gave it to the cashier of the bank, didn't he?

"*A.* I don't know whether he did or not.

"*Q.* You did not see him do that?

"*A.* I wasn't down there at that time.

"*Q.* The last you saw of the note was when you gave it to Mr. Donaldson?

"*A.* Yes, sir.

"*Q.* There is something about a $190 note that was given.  Had you given a note to Mr. Donaldson before April 4th in settlement of accounts?

"*A*. I guess I did, if I can remember. I don't think I ever told you about that before. It was for $590. That note was paid. When it became due it was returned to me. It was not returned to me before I paid it. When I paid it, it was done at the bank. I went to the bank and paid $400 in cash and gave a new note to the bank for $190.

"*Q*. And you also upon that same date gave a note for $367.29, to Lonier & Hoffer, payable to Lonier & Hoffer, didn't you?

"*A*. Yes.

"*Q*. And the last you saw of that note, which I show you, was when you handed it to Mr. Donaldson?

"*A*. Yes."

Recross examination:

" I went with Mr. Donaldson to the bank on April 4th, and when I went there I had a note there of $590 and wanted to make arrangements to take care of that $590 note, and also pay Mr. Donaldson for a bill that was then coming due.

"*Q*. For $367.29, so you paid Mr. Fritz $400 upon the $590 note and gave him back another note for $190?

"*A*. Yes.

"*Q*. And Mr. Donaldson indorsed that, did he not?

"*A*. Yes.

"*Q*. Signed Lonier & Hoffer's name on the back of it?

"*A*. Yes, sir.

"*Q*. Then you also gave Mr. Donaldson another note for $367.29, payable to the order of Lonier & Hoffer?

"*A*. Yes.

"*Q*. And Mr. Donaldson signed that?

"*A*. Yes.

"*Q*. And Mr. Fritz laid the money out there on the desk, and either you or Donaldson took the money?

"*A*. He must have taken it. I didn't get it.

"*Q*. So you paid the $590 note with $400 in cash and a new note, and also paid this bill by getting another loan from the bank for $367.29?

"*A*. Yes, sir.

"*Q*. And Mr. Donaldson went away with the money, didn't he?

"*A*. He must.

"*Mr. Freeman:* We move to strike out the testimony of any other note as incompetent and immaterial. (Objection overruled. Exception for plaintiffs.)"

Redirect examination:

"Yes, back in January I gave a note to Mr. Donaldson for $590. That note ran to Lonier & Hoffer. The next I knew of it, it was over at the Ann Arbor Savings Bank. Upon April 4th, I went to the Ann Arbor Savings Bank with $400 in cash. The bank was claiming to own that note at that time, and I went to the bank with $400 in cash and paid that note to the bank with the $400 in cash and another note. It seems to me that the note must have been given to Lonier & Hoffer. Yes, the bank claimed to own that $590 note. They had it. I was paying a note the bank had against me. I paid that. I owed Lonier & Hoffer only $367.29.

"Q. You paid that by giving this note of $367.29 to Lonier & Hoffer? Is that right?

"A. I think so.

"Q. Now, the bank had a note against you for $590 that you had given to Lonier & Hoffer, but the bank was then claiming to own it, is that true?

"A. I don't see. Of course, I understand what you mean, I can't recollect; but it seems to me that $190 note was made out to Lonier & Hoffer. Of course, I don't know.

"Q. You paid $400 on the note?

"A. I understand.

"Q. You paid $400 in cash that you had to the bank?

"A. Yes.

"Q. That left you owing $190 to the bank upon that note?

"A. Yes.

"Q. What reason would there be for giving a note to Lonier & Hoffer?

"A. I couldn't tell you. It has been so long ago.

"Q. Then you are not able to say whether the $190 note ran to Lonier & Hoffer or to the bank?

"A. I don't believe I can."

Recross examination:

"On January 4th when I gave this $590 note I was indebted to Lonier & Hoffer for $590 worth of flour, and went to the bank with Mr. Donaldson.

"Q. You went with Mr. Donaldson, the agent of Lonier & Hoffer, who pretended to be their agent, at least, down to the bank, and asked Mr. Fritz for a loan of $590, didn't

you, to pay that, and you got it on your note there that day?

"*A.* Yes.

"*Q.* And Mr. Donaldson took that $590 and put some more money with it and bought a draft and sent it to Lonier & Hoffer?

"*A.* I think so.    When that $590 came due I owed it at the bank and had $400 in my bank that I could spare. I paid $400 on that note and gave a $190 note for the balance.

"*Q.* And gave a new note for $367.29, and turned it over to the other fellow; is that true?

"*A.* Yes."

Redirect examination:

"This note of $367.29 was given for flour; it was not a renewal of any old note or anything of that kind; that was for a bill of flour, and when I gave the note Donaldson marked bills 'paid.'"

It will be observed that the testimony of this witness drawn out upon the cross-examination is inconsistent with that given on his direct examination.    His testimony on the direct examination tends to support the theory of plaintiffs.    His testimony on the cross-examination as well as the discount slip tends to support the theory of defendants.    The cashier of the bank was not a witness.

Under these circumstances, notwithstanding the request of counsel that the judge should direct a verdict one way or the other, we think he ought not to have done so, but should have permitted the jury to say which portion of Mr. Heusel's testimony they believed.

Judgment is reversed, and new trial ordered.

OSTRANDER, HOOKER, CARPENTER, and McALVAY, JJ., concurred.