POIKANEN v. THOMAS FURNACE CO.

1. TRIAL — NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—WILFUL NEGLIGENCE—MOTION FOR DIRECTED VERDICT—CONTRADICTORY TESTIMONY.

In an action for personal injuries received by plaintiff, a miner, while he was being lowered to his work in defendant's mine, the trial court properly refused to direct a verdict for defendant on the ground that plaintiff wilfully violated a rule prohibiting miners from "ringing themselves down," where the testimony as to the existence of said rule at defendant's mine was in dispute.

2. SAME—CONTRADICTORY TESTIMONY OF WITNESS PRESENTS QUESTION FOR JURY.

Where a witness gives testimony some parts of which are inconsistent with other parts of it, a question is presented for the jury, since it is for them, and not the court, to decide which version is true.

3. SAME—MOTION FOR DIRECTED VERDICT—EVIDENCE.

In disposing of a motion by defendant for a directed verdict, the testimony most favorable to plaintiff's claim must be accepted as true.

On excessiveness of verdicts in actions for personal injuries other than death, see note in L. R. A. 1915F, 30.

On admissibility of mortality tables as evidence, see notes in 40 L. R. A. 553; L. R. A. 1918C, 1071.

4. DAMAGES—MINIMIZING DAMAGES IN NEGLIGENCE CASES.

The rule of law that one must minimize his damages is applicable to negligence cases as well as to others.

5. TRIAL—INSTRUCTIONS AS TO DUTY TO MINIMIZE DAMAGES.

Where the undisputed medical testimony showed that plaintiff's injuries were minor and would be relieved by a minor operation, but that he had neglected to have said minor operation performed, the action of the trial judge in so modifying defendant's requests to charge in regard thereto as to permit the jury to disregard said testimony, resulting in a grossly excessive verdict, *held*, reversible error.

6. EVIDENCE—MORTALITY TABLES NOT ADMISSIBLE WHERE PLAINTIFF'S INJURIES MAY BE RELIEVED BY MINOR OPERATION.

The mortality tables are not admissible in evidence in a negligence case, where plaintiff's injuries are minor and may be relieved by a minor operation.

Error to Gogebic; Driscoll (George O.), J. Submitted January 30, 1924. (Docket No. 27.) Decided April 10, 1924.

Case by Henry Poikanen against the Thomas Furnace Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Charles M. Humphrey,* for appellant.

*Harry K. Bay,* for appellee.

Plaintiff brings this action to recover for personal injuries received by him while employed in defendant's mine. Defendant had not elected to become subject to the provisions of the workmen's compensation act. Plaintiff recovered a judgment for $6,500. To understand the happening of the accident and some of the questions raised necessitates a statement of some details. The mine was a new one and plaintiff had been there employed from the beginning of the development. The bottom level was 257 feet from

the surface, and there was a first level about 100 feet above it. The shaft has been extended above the surface about 40 feet where the cars of ore were run by "landers" onto a trestle and dumped on the stock-pile. The cage or skip in this shaft was used to bring up the ore, send down material and to carry the men from the surface to the different levels and to bring them up again. It was operated by an engineer in the engine house a short distance from the shaft. He raised or lowered the cage on bell signals. The number of rings notified him to what point the cage should be moved and whether it was occupied by men or material, the cage being run more carefully and slowly when occupied by the men. When putting a car of ore on the cage at the first level two steel rails were run across the shaft under the cage to steady it while the car of ore weighing about a ton and a half was being run on; they were operated by a lever. The men came to the surface at 12 o'clock for their dinner and remained until 1. If there was some work in the mine which could not be done while the miners were at work a couple of men remained down and did this work during this intermission; they came up at 1 for their dinner and went down again at 2.

On the day of the accident plaintiff and another workman remained on the bottom level to do some work during the intermission. They came up at 1 and the men at the same time resumed their operations. While plaintiff was eating his dinner a car of ore was hoisted from the first level but the steel rails were not withdrawn from across the shaft thereafter as was customary. At 2 o'clock plaintiff entered the cage and signaled to be taken to the bottom level. The engineer lowered the cage as plaintiff claims more rapidly than usual; it came into collision with the steel rails across the shaft, plaintiff was thrown

to the floor of the cage and as he claims suffered serious injury.

FELLOWS, J. (*after stating the facts*).    At the close of plaintiff's proofs and again at the close of all the proofs defendant's counsel asked for a directed verdict.    It is here earnestly insisted that both motions should have been granted, and the claim is here made, as was made in the court below, that the testimony establishes that at defendant's mine and generally throughout the iron mining district, it is the uniform custom for the "landers" to give the signals to move the cage and miners were forbidden at this mine and at others from giving the signals or "ringing themselves down" as it is sometimes called.    It is pointed out that this is a rule promulgated for the safety of employees, the "landers'" duty requiring them to return the empty cars to the cage and they always knowing where the cage is and where it came from and the conditions existing in the shaft.    It is insisted that the violation of this rule, notwithstanding that certain common-law defenses are taken away by section 5423, 2 Comp. Laws 1915, was wilful within the provisions of that section and precludes recovery.    Without determining whether the violation of a positive rule is wilful negligence within the meaning of that section (a question not before us), we do not think upon this record it can be said that the testimony is undisputed that such a rule was in force at this mine.    Defendant introduced considerable testimony sustaining its claim. On the other hand, the plaintiff called several witnesses who gave testimony to the contrary, and who said on direct-examination that it was the common practice at this mine for miners to "ring themselves down."    Their testimony was somewhat modified on cross-examination, but where a witness gives testimony some parts of which are inconsistent with other

parts of it, a question is presented for the jury; it is for the jury and not for the court to decide which version is true. *Lonier* v. *Savings Bank*, 153 Mich. 253; *Tuttle* v. *Railway Co.*, 193 Mich. 390; *Foster* v. *Rinz*, 202 Mich. 601.ˉ The testimony most favorable to plaintiff's claim must be accepted as true on a motion by defendant for a directed verdict. The trial judge did not err in refusing to direct a verdict; he fairly submitted defendant's theory on this subject to the jury. Defendant's counsel preferred several requests which were couched in different language but were to the same effect. We quote one of them:

> "I charge you that it is a fundamental rule of law that one who is injured in his person by the wrongful or negligent act of another, is bound to exercise reasonable care and diligence to minimize the resulting damage, and to the extent that his damages are the result of his unreasonable enhancement thereof, or are due to his failure to minimize his damages, he cannot recover."

The substance of these requests was given with the following modification:

> "Medical testimony has been produced on the part of the defendant showing that the hydrocele, hemorrhoids and lump on the knee of the plaintiff could be cured by a minor surgical operation. If you believe this testimony, then I charge you that it is the duty of the plaintiff to have submitted to such operations as soon as each of these conditions developed if an ordinarily careful and prudent person in his situation would have done so under the same circumstances, and that he cannot recover for any damages after such time as these conditions could have been so cured. In other words, gentlemen, under the rule that a person injured through the fault or negligence of another must minimize his damages, the injured party must do all to minimize them that an ordinarily careful and prudent person would do under the same or similar circumstances. The rule does not require him to go so far as to undergo an operation which might or would endanger his life or to do anything that it is impossible

to do, but it does require him to exercise such ordinary care as an ordinarily careful and prudent person in his situation would do under the same or similar circumstances to minimize the injuries and avoid the enhancement of the damages.   If he did this, he did all that the law required of him, but if he did not, he could not and can not be allowed for any injurious consequences which would have been avoided had he done so."

A further statement of facts will aid in understanding the question under consideration.   After the accident plaintiff walked home, a distance of a quarter of a mile.   He was confined to his home for some time and was treated by the company's doctor.   To him he made no complaint of hemorrhoids, hydrocele or trouble to his knee.   He returned to the mine and worked 42 days; afterwards he worked at other jobs at reduced pay.   There is also testimony that defendant's and other mines later closed down.   Upon the trial he claimed that as a result of the accident he had hemorrhoids, hydrocele and a lump on his knee which troubles incapacitated him from hard work. Four doctors were called as witnesses, one by the plaintiff and three by the defendant.   All the medical testimony agrees that all of the defects plaintiff claims he was suffering from as a result of the accident could be cured or his condition materially improved by minor operations.   Indeed, plaintiff's physician advised an operation and plaintiff intended to have one but did not come.   The rule of law that one must minimize his damages is applicable to negligence cases as well as others.   *Beauerle* v. *Railroad Co.,* 152 Mich. 345. And in at least three cases (*Kricinovich* v. *Foundry Co.,* 192 Mich. 687; *O'Brien* v. *Albert A. Albrecht Co.,* 206 Mich. 101 [6 A. L. R. 1257]; *Myers* v. *Wadsworth Manfg. Co.,* 214 Mich. 636) this court reviewing on certiorari cases under the workmen's compensation law has held on testimony no stronger than that ap-

pearing in the record before us that the refusal of the injured employee to have the operation performed was unreasonable as matter of law and has denied compensation.    In the *Kricinovich Case* it was said:

"Before the defendant is to be charged, in law or morals, with the duty to compensate him, the claimant should first discharge the primary duty owing to himself and society to make use of every available and reasonable means to make himself whole."

In the *O'Brien Case* it was said:

"We appreciate the timidity with which the average person contemplates an operation, minor as well as major.    But we also appreciate that in thousands of cases, operations, many of them of but minor degree, have restored incapacitated men to the army of wage earners, and put them in position to discharge their duty to their dependents, themselves and to society. We are impressed that under the undisputed evidence in the case it was the plaintiff's duty to accept the tendered operation.    His unequivocal refusal to follow the advice and judgment of both physicians with reference to the operation relieved defendants from further activities in that direction, and, for the time being at least, absolved them from liability."

And in the *Myers Case* we quoted with approval the following statement of the rule:

"Sound public policy assuredly will not justify the capitalization of such injury for the drawing of a long disability pension, when by a relatively simple operation the injured person can in all probability be made sound."

In each of these three cases we held as matter of law that the employee's refusal to submit to an operation was unreasonable.    We must so hold here upon substantially the same state of facts.    The modification of plaintiff's requests permitted the jury to disregard the undisputed medical testimony that plaintiff's injuries were minor and would be relieved by

minor operations and resulted in a grossly excessive verdict which could not under any circumstances stand. Whether a man is prudent and careful or imprudent and careless, the law requires that he must minimize his damages. The requests should not have been modified.

From what has been said it follows that the mortality tables should not have been received in evidence. Assignments of error of minor importance will not be discussed. They are not liable to arise on a new trial.

The judgment will be reversed with a new trial, and with costs of this court to defendant.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.