SULLIVAN *v.* PITTSBURGH STEAMSHIP CO.

1. COLLISION—FOG—NEGLIGENCE—QUESTION FOR JURY.
   In an action by the owner of a raft of logs for damage thereto by collision with defendant's steamer in navigable waters, the trial judge would not have been justified in holding as matter of law that plaintiff was guilty of negligence *per se* in violating the provisions of Rule 14 of act of congress of February 8, 1895 (28 U. S. Stat. chap. 64, p. 645), in view of a conflict in the testimony as to the presence of fog at the time of the collision.[1]

---

[1]Collision, 11 C. J. § 302.

2. SAME—FAILURE TO MOOR AND LIGHT RAFT NEGLIGENCE PER SE.

> Under the undisputed evidence the trial judge properly held that plaintiff was guilty of negligence *per se* by reason of his violation of Rule 10 of said act of congress and 2 Comp. Laws 1915, § 6656, in failing to properly moor and light the raft.[2]

3. ADMIRALTY—STATE COURT SHOULD RECOGNIZE APPLICABLE ADMIRALTY RULES—NEGLIGENCE A COMMON-LAW QUESTION.

> Where an action is brought in a State court for a maritime tort committed upon navigable waters and within the jurisdiction of admiralty, it is the duty of the State court to recognize and enforce the applicable rules of admiralty, but upon the question of whether a particular act constitutes negligence, the rules of the common law are by analogy applicable.[3]

4. COLLISION—ADMIRALTY RULE DIVIDING DAMAGES NOT APPLICABLE IN STATE COURT.

> Where a common-law action for a maritime tort is brought in a State court, the admiralty rule that damages caused by concurrent negligence of both parties are divided is not applicable.[4]

5. SAME — NEGLIGENCE — CONCURRENT NEGLIGENCE — PROXIMATE CAUSE.

> The negligence of the owner of a raft of logs in failing to properly moor and light it, as required by Federal and State statutes, which occurred the night before its collision with defendant's steamer in the channel of navigation, whence it had drifted during the night, was not concurrent with defendant's negligence, if any, in failing to avoid it, and therefore could not be regarded as the proximate cause of the accident.[5]

6. SAME—SUBSEQUENT NEGLIGENCE JURY QUESTION.

> Whether the officers of defendant's steamer should, by the exercise of ordinary care, have discovered the raft in time to avert the accident, notwithstanding plaintiff's prior negligence, *held*, under the evidence, a question for the jury.[6]

7. SAME—INSTRUCTIONS.

> There is no merit in defendant's objection to the use of the word "most" by the trial judge in submitting to the

---

[2]Collision, 11 C. J. § 302; [3]Id., 11 C. J. § 12 (1926 Anno); [4]Id., 11 C. J. § 256; [5]Id., 11 C. J. § 15; [6]Id., 11 C. J. § 302.

jury the question as to whether defendant "by the exercise of the most ordinary care" could have avoided a collision.[7]

8. SAME—ONE ACTING IN EXTREMIS NOT HELD TO EXERCISE OF DELIBERATE JUDGMENT.

The master of a vessel acting *in extremis* is not held to the exercise of that cool and deliberate judgment which the facts as they later develop show was the better course to have pursued.[8]

9. DAMAGES—DUTY TO MINIMIZE DAMAGES.

The rule that one must minimize his damages is applicable to negligence cases as well as others.[9]

10. COLLISION—EVIDENCE AS TO ABILITY TO MINIMIZE DAMAGES TOO PROBLEMATICAL FOR SUBMISSION TO JURY.

Evidence as to the ability of the owner of timber, scattered by a collision with defendant's steamer, to salvage it or any of it within its value, *held*, too problematical and conjectural to justify submission of that question to the jury.[10]

11. SAME—EVIDENCE—GREAT WEIGHT OF EVIDENCE.

Verdict for plaintiff *held*, not so manifestly against the weight of the evidence as to require reversal.[11]

Error to Chippewa; Fead (Louis H.), J. Submitted January 16, 1925. (Docket No. 107.) Decided April 3, 1925.

Case by Frank T. Sullivan against the Pittsburgh Steamship Company for damage to a raft of timber. Judgment for plaintiff. Defendant brings error. Affirmed.

*McDonald & Kaltz* (*Kelley, David & Cottrell,* of counsel), for appellant.

*Davidson & Hudson,* for appellee.

FELLOWS, J.    Plaintiff, engaged in lumbering operations, made up a small raft enclosed in a bag

[7]Collision, 11 C. J. § 303; [8]Id., 11 C. J. § 10; [9]Id., 11 C. J. § 309; Damages, 17 C. J. § 101; [10]Collision, 11 C. J. § 302 (1926 Anno); [11]Id., 11 C. J. § 306.

boom, slightly over 300 feet across, consisting of handle wood, hardwood, saw logs, ties and pulp wood at Mosquito bay, about six and one-half miles above the locks and rapids at Sault Ste. Marie. This occurred June 24, 1923. The water was shallow there and calm. The raft was not secured as required by section 6656, 2 Comp. Laws 1915, but two 80-pound anchors were thrown out. No lights were placed on the raft; plaintiff expected to tow it the following morning to its destination. The work was completed about 6 o'clock and the raft was in place at 9 o'clock that night. From some unexplained and probably unexplainable cause the raft got away and drifted out into the channel of navigation and was rammed and broken up by the "Phipps" owned by defendant. The record fairly and quite definitely fixes the time of the collision between the raft and the steamer as about two minutes before sunrise on the morning of the 25th. There was a conflict in the testimony as to whether there was fog obstructing the vision; a disinterested witness called by plaintiff testifies that he saw the raft half a mile away, while the officers of the Phipps testify to a low fog obstructing their vision, and claim they were running the Phipps, which was down bound, slowly and carefully on account of the fog and did not see the raft until they were within 600 or 700 feet from it, and that they would then have safely passed it had not an up bound boat signaled that it desired to pass on the port side, which signal they accepted and reversed the engine so as to pass on the port side which action threw the bow into the boom causing it to break up.

Defendant asked for a directed verdict insisting that no negligence of the officers of the Phipps was shown, and that plaintiff was guilty of contributory negligence, and that he had not taken the proper steps to minimize his loss. In addition to the general claim

230—Mich.—27.

of contributory negligence defendant insisted that plaintiff was guilty of negligence *per se* in that he had violated the provisions of section 6656, 2 Comp. Laws. 1915, in not securing the raft as therein provided, that he had violated Rule 10 of the act of congress of February 8, 1895, entitled: "An act to regulate navigation on the Great Lakes and their connecting and tributary waters (28 U. S. Stat. chap. 64, p. 645)," which provides:

"Produce boats, canal boats, fishing boats, rafts, or other water craft navigating any bay, harbor, or river by hand power, horse power, sail, or by the current of the river, or which shall be anchored or moored in or near the channel or fairway of any bay, harbor or river, and not otherwise provided for in these rules, shall carry one or more good white lights, which shall be placed in such manner as shall be prescribed by the board of supervising inspectors of steam vessels."

And Rule 14 of the same act which provides:

"Whenever there is thick weather by reason of fog, mist, falling snow, heavy rainstorms, or other causes, whether by day or by night, fog signals shall be used as follows:   *   *   *

"Produce boats, fishing boats, rafts, or other water craft navigating by hand power or by the current of the river, or anchored or moored in or near the channel or fairway and not in any port, and not otherwise provided for in these rules, shall sound a fog horn, or equivalent signal, at intervals of not more than one minute."

The trial judge would not have been justified on this record in holding as matter of law that plaintiff was guilty of negligence *per se* in violating the provisions of Rule 14 of the act of congress, above quoted, because, as we have pointed out, there was a conflict in the testimony as to the presence of fog on the morning in question.   He was justified and, under the undisputed evidence, required to hold that plaintiff was guilty of negligence *per se* by reason of his violation

of the provisions of Rule 10 of the act of congress above quoted, and the provisions of the State statute, and he so held and so instructed the jury, but submitted to the jury the question of whether defendant was guilty of subsequent or discovered negligence.

Where an action is brought in a State court for a maritime tort committed upon navigable waters and within the jurisdiction of admiralty, it is the duty of the State court to recognize and enforce the applicable rules of admiralty (*Belden* v. *Chase,* 150 U. S. 674 [14 Sup. Ct. 264]), but upon the question of whether a particular act constitutes negligence, the rules of the common law are by analogy applicable.   11 C. J. p. 1030.   In admiralty where the damages are caused by the concurrent negligence of both parties, the damages are divided.   11 C. J. p. 1030; Spencer on Marine Collisions, § 191; but this rule is not applicable where a common-law action is brought in the State court.   *Belden* v. *Chase, supra.*

The first question we shall consider is whether negligence of plaintiff was concurrent, whether it could have proximately contributed to the collision.   *The Martello,* 153 U. S. 64 (14 Sup. Ct. 723).   When plaintiff left the raft on the evening of the 24th without complying with the State statute and the Federal rule, his violations of both the State statute and the rule were complete.   His acts of negligence had then been committed.   His negligence was antecedent to that of defendant if defendant was guilty of negligence. His negligence may have been the remote cause, but it could not by any possibility be regarded as the proximate cause.   It was not concurrent with the acts of defendant.   This was the conclusion reached by the trial judge and in so concluding he did not err. He charged the jury as follows:

"It also appears undisputed that the raft was not tied to the shore of Mosquito bay, nor was it tied to piling driven in the bed of the bay, that it was un-

attended and without lights or signals, and I charge you, as a matter of law, that the plaintiff was negligent in his care of the raft, and is chargeable with negligence in the fact that the raft was in the channel of the river in the way of navigation.

"So, we start out in the consideration of this case, with the situation that the raft was improperly and negligently in the channel of the river, and, consequently, the Phipps was not obliged to keep a special lookout for it, or to ascertain its presence and to find it in the same way as would have been the case if the raft had been properly in the channel of the river, under the regulations.

"However, this doesn't settle the case, but there is a further question presented to you, and that is whether the defendant, through the officers of the Phipps, was negligent thereafter. The question is, whether the officers of the Phipps were negligent in their operation of the vessel after they discovered the raft, or, by the exercise of the most ordinary care, ought to have discovered it.

"Negligence is the failure to use that care which an ordinarily prudent person would have used under the same or similar circumstances.

"Consequently, the questions for you to determine, primarily, are these:

"*First*, When did the officers of the boat discover the raft?

"*Second*, Where would they have discovered it if they had used the most ordinary care, just an ordinary degree of ordinary care?

"*Third*, After discovering it, or after the time when they would have discovered it by the use of the most ordinary care, did they use ordinary care in navigating the vessel and try to avoid the raft?

"If you find that they did use such care, then the defendant here is not liable. If you find they did not use such care, then the defendant would be liable for the damages resulting from such negligence."

Was the trial judge justified on this record in submitting the question of subsequent or discovered negligence to the jury? We think this question should be answered in the affirmative. We have already

noted that the question of whether there was fog on the river was one for the jury.   The collision occurred about two minutes before sunrise when, as one witness testifies, the raft could be seen half a mile away; the navigable channel was at least half a mile wide.   We think it was a question for the jury whether the officers of the steamer should by the exercise of ordinary care have discovered the raft in time to have averted the accident.   The accident occurred a short distance above the locks at Sault Ste. Marie through which must pass all up bound and down bound boats in the tremendous commerce of these great inland seas.   Writing in a case involving an accident where the vessel traffic was congested and speaking of the duty of the lookout, it was said by Mr. Justice Swayne, speaking for the court in the case of *The Ariadne,* 13 Wall. (U. S.) 475:

"The duty of the lookout is of the highest importance.   Upon nothing else does the safety of those concerned so much depend.   A moment's negligence on his part may involve the loss of his vessel with all the property and the lives of all on board.   The same consequence may ensue to the vessel with which his shall collide.   In the performance of this duty the law requires indefatigable care and sleepless vigilance.   The rigor of the requirement rises according to the power and speed of the vessel in question.   It is applied with full force to the steamships belonging to our commercial marine.   If this were not so, there would be no safety for other vessels."

In the recent case of *Gibbard* v. *Cursan,* 225 Mich. 311, Mr. Justice CLARK fully considered the questions of antecedent and subsequent or discovered negligence and reviewed the authorities at length.   It is unnecessary to again go over the ground.   Under the rules there laid down, plaintiff here was entitled to go to the jury.   Defendant's criticism of the use of the word "most" in the charge is without merit and

the instructions given the jury when they returned for further instructions were correct.

We agree with defendant's counsel that the master of a vessel acting *in extremis* is not held to the exercise of that cool and deliberate judgment which the facts as they later develop show was the better course to have pursued.    In an extremity he must use his own judgment as to the best course to pursue.    *The Oregon,* 158 U. S. 186 (15 Sup. Ct. 804) ; *The Hercules,* 73 Fed. 255; *The Queen Elizabeth,* 122 Fed. 406.    But we think the testimony made this question one for the jury and the charge fully protected the rights of defendant.    Manifestly, had the Phipps sighted the raft when under some of the testimony it should have been sighted in the exercise of ordinary care, a very slight degree of care would have prevented the Phipps from running so close to the raft that an insignificant movement of its bow or stern would ram the raft and break it up.

The rule that one must minimize his damages is applicable to negligence cases as well as others. *Poikanen* v. *Thomas Furnace Co.,* 226 Mich. 614.    We do not understand the trial judge disregarded this rule.    There was involved in the case not only the rule of law but also the practical question of whether the timber could be salvaged without costing more to rescue it than it was worth.    The boom which surrounded the timber was so damaged that it could not be repaired within the necessary time to make it available.    Plaintiff made every effort to get another boom but was unable to do so.    Defendant's witnesses corroborate the testimony of plaintiff as to scarcity of booms both on the American and Canadian sides. Plaintiff's testimony establishes that the practical way to salvage the timber required the use of a boom and two launches; defendant's witnesses agreed in this view, but one of them expressed the view that some

of the timber might have been salvaged but did not venture an opinion that it could have been saved within its value.    Quite a bunch of it was over on the Canadian side, and although then in calm water was but a short distance above the rapids.    Upon this record we are persuaded that the plaintiff's ability to salvage the timber or any of it within its value was too problematical and conjectural to justify the submission of that question to the jury.

There was a motion for a new trial and the question is saved and before us of whether the verdict is against the overwhelming weight of the evidence.    While we might reach a different conclusion than did the jury if we were the triers of the facts, we are not persuaded that the verdict is so manifestly against the weight of the evidence as to justify us in setting it aside.

The judgment is affirmed.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.