GOGGIN v. PEOPLES TRANSPORT CORPORATION.

1. Damages—Aggravation of Fibroid Tumor—Bleeding—Proximate Cause.

Woman whose leg was caught in exit door of public bus as she was alighting therefrom and forced to hop along street on other leg for some distance before bus was stopped was not entitled to damages for aggravation of fibroid tumor nor for local bleeding caused by a laceration of the vaginal wall by a curettage, where there was no connection between such conditions and the accident.

2. Same—Proximate Cause—Hemorrhages—Nervous Condition—Back Pains.

Woman who sustained prolonged hemorrhaging, a nervous condition and back pains following accident as she was leaving

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 15 Am Jur, Damages, § 18.
[3] 3 Am Jur, Appeal and Error, § 1222.

public bus would be entitled to damages therefor where shown to have been caused by the accident.

3. New Trial—Damages—Remittitur—Proximate Cause.

A defendant is entitled to a new trial where $7,500 verdict was reduced by remittitur of $2,500 because trial judge believed sympathy was the basis for the additional amount and it appears an indeterminable amount of the liability was predicated upon items not proximately caused by the accident.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted January 10, 1950. (Docket No. 35, Calendar No. 44,654.)   Decided April 3, 1950.

Case by Marguerite Goggin against Peoples Transport Corporation for personal injuries sustained when bus from which she was alighting started. Verdict and judgment for plaintiff. Remittitur filed. Defendant appeals. Reversed and new trial granted.

*Alexis J. Rogoski* and *Legatz & Lidke,* for plaintiff.

*Mitts & Smith,* for defendant.

Butzel, J.   Marguerite Goggin brought suit against Peoples Transport Corporation, a Michigan corporation. In her declaration she alleged that while alighting from defendant's bus she suffered injuries, consisting of aggravation of a pre-existent fibroid tumor, pain and suffering, and permanent impairment to her nervous system. The jury awarded her a verdict of $7,500. The court denied defendant's motion for a new trial on condition that plaintiff consent to a remittitur of $2,500. Plaintiff complied with this condition. Defendant appeals from the judgment of $5,000.

Defendant is a common carrier of passengers in the city of Muskegon and its environs. Plaintiff is a married woman, and at the time of the accident was 35 years old. She and her 2 young sons were passengers on one of defendant's Jackson street busses on the afternoon of June 23, 1946. When the crowded bus reached their destination, plaintiff, followed by her sons, walked to the rear exit. Several other passengers preceded her in alighting. She testified that as she stepped on the pavement with her right foot, the door of the bus closed on her left leg, holding it firmly above the knee; that the remainder of her body was outside the vehicle; that the bus started and that she hopped along on her free leg for a distance of approximately 250 feet until the driver, apparently hearing the screams of the passengers, stopped the vehicle. She did not claim that there was anything for her to grasp with her hands for support. She did not claim to have been dragged, nor did she allege any injury to her leg although she did claim back pains.

Plaintiff testified that after releasing her the driver of the bus told her that he did not see her when he closed the door. Defendant denied that the accident had occurred and contended that there was insufficient evidence for the jury to find for the plaintiff. Two witnesses, however, testified to their presence on the bus at the time the events related by plaintiff transpired and corroborated her claim of being caught in the vehicle door in the manner described. One of them stated that the bus traveled some distance, but in answer to a question of whether the bus was going fast or slow stated that the driver of the bus was just starting. The other witness did not testify as to the speed, except that the bus driver did not stop right away when the passengers called to him, but that he slowed down a little.

Plaintiff testified that she was weak, faint and shaky immediately after the accident; that she returned home with her sons almost at once on another bus; that an hour later a uterine hemorrhage commenced and that the flow persisted for a period of 5 weeks; that she remained in bed during most of this interval; and that she would start to flow heavily whenever she stood for any length of time. One of the witnesses to the accident related that she saw plaintiff sitting on her front porch steps some hours later on the same day and that in answer to an inquiry plaintiff stated that she did not feel very well.

Plaintiff did not consult a doctor during the 5 weeks following her mishap because, as she testified, she realized that a thorough examination would be impossible while the hemorrhage continued and she waited from day to day until the flow stopped. At the conclusion of the 5 weeks she first went to an attorney who recommended a doctor. This doctor sent her to a gynecologist who found that she was spotting at the time of examination. He advised her he could find nothing that could have been the result of the accident. Appearing as a defense witness, he testified that at the time of the examination he was unable to determine the cause of the flow and recommended a curettage for diagnostic purposes in the event that the flow did not abate. He further testified that he found no fibroid tumor at the time, that had there been one of any size he would have discovered it. He found no tears in the uterine wall or abdominal cavity. He stated that he found that there was indication of a nervous condition at that time, which might cause the flow. However, he further stated that if a person had manifested no nervous condition prior to the accident and had become extremely nervous thereafter, it would not necessarily be natural to attribute the subsequent condition to the accident.

A year later a curettage was performed in Menominee, and it was discovered that plaintiff had a uterine tumor, which was successfully removed by a surgeon in Muskegon. The latter testified that he found her very much of a nervous wreck on account of a previous pathological report of a possible malignancy which required immediate excision. He testified that the nervous shock from the accident could account for a hemorrhage, but that the fibroid uterus condition was not caused or aggravated by the accident. He further testified that plaintiff's highly nervous condition might have been caused through the fear that there was a cancerous condition; that the flow should have stopped after the major surgery, and that the bleeding which occurred thereafter was local in nature, due to a laceration of the vaginal wall caused through roughness in the previous curettage. Testimony indicated that the fibroid condition could have caused the flow.

Testimony on behalf of plaintiff showed that prior to the accident she was an active woman, engaged in social activities and nurses' aid work, and able to do her own housework. She claimed that as a result of the accident she was a "nervous wreck," unable to do housework and other activities, and that standing for appreciable periods or overexertion would cause her to hemorrhage. Neither doctor had examined plaintiff prior to the accident. The gynecologist stated that he did not find her nervous condition serious when she consulted him about 5 weeks after the accident. The surgeon was unable to state that her nervous condition was related to the accident, although in answer to a hypothetical question, he replied that the assumption would be that the mishap was an element of it.

The medical testimony upon which a case of this nature must largely rely to show the extent of injury (*Zoski* v. *Gaines,* 271 Mich 1; *Ford* v. *Nicol,* 261

Mich 307), establishes no aggravation of the fibroid tumor or connection between it and the accident. Therefore, plaintiff is entitled to no award of damages for that aspect of her illness, as it bears no proximate relation to defendant's negligence. The local bleeding, caused by a laceration of the vaginal wall by the curettage, likewise is not an item of damages for which defendant may be held liable under the evidence introduced.

Therefore, the only injurious effects of the alleged mishap entitling plaintiff to damages are the hemorrhaging after the accident and the nervous condition, if they were caused by that psychic trauma, and any back pains which plaintiff suffered from it.

The trial judge, in the opinion denying a new trial, stated that the verdict was excessive and that it was inconceivable that a verdict in excess of $5,000 could be upheld under the most favorable view of the case, and he ordered a remittitur of that sum. *Grinnell* v. *Carbide & Carbon Chemicals Corporation,* 282 Mich 509. He further stated that he believed that sympathy was the basis of the additional amount awarded. A careful reading of the record impresses us with the correctness of his views, but we are unable to so accurately determine the extent to which sympathy affected the jury's consideration of the case and size of the verdict. It appears that an indeterminable amount of defendant's liability was predicated upon items which we have herein held were not shown to bear a proximate relationship to the accident.

We do not discuss other errors claimed, as they are not apt to recur on a new trial. For the reasons stated the cause is remanded for a new trial. Costs to defendant.

BOYLES, C. J., and REID, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.