HUPF, Plaintiff, v. STATE FARM MUTUAL INSURANCE COMPANY and another, Defendants. [Two appeals.] *

*November 28, 1960—January 10, 1961.*

---

\* Motion for rehearing denied, with $25 costs, on March 7, 1961.

For the plaintiff there was a brief by *Smith, Puchner, Tinkham & Smith,* attorneys, and *John E. Bliss* of counsel, all of Wausau, and oral argument by *Mr. Richard P. Tinkham* and *Mr. Bliss.*

For the defendants there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *John F. O'Melia.*

DIETERICH, J.   The first issue for this court to consider is whether or not there has been an abuse of discretion by the trial court in granting the second extension of time in which

to serve the bill of exceptions. *Miller v. Belanger* (1957), 275 Wis. 187, 81 N. W. (2d) 545.

One of the attorneys for the defendants recites in his affidavit of June 8, 1960, the following facts in support of his motion for further time in which to serve the bill of exceptions: That the court reporter informed him on March 11, 1960, that she could not complete the transcript by April 4, 1960; April 4, 1960, being the ninetieth day to settle the bill of exceptions, and that she would require at least an additional sixty days from April 4, 1960. This fact is corroborated by an affidavit of the court reporter. The court granted the defendants' motion and extended the time in which to settle the bill of exceptions to June 3, 1960.

The affidavit further recites that the transcript was delivered to him on May 31, 1960, while he was engaged in another trial, which required his presence from Tuesday, May 31, to Wednesday, June 1, 1960, at 4:30 p. m. He further states that at the time he was handed the transcript he was not in possession of his file and that he relied upon the court reporter's statement that the time to settle the bill of exceptions would not expire until June 8 or 9, 1960. This was supported by the affidavit of the court reporter. On June 3, 1960, the affiant mailed a notice of appeal, together with a proposed stipulation to settle the bill of exceptions to the plaintiff's attorney. On June 7, 1960, plaintiff's counsel returned them, stating he would not admit service because the time had expired under the original extension. He further states in the affidavit that he seeks a further extension on the ground of excusable neglect.

The plaintiff's attorney, in his affidavit opposing the second extension of time to settle the bill of exceptions, states that the notice of entry of judgment was served on January 5, 1960, that the transcript of the record was ordered on February 9, 1960, that the first extension of time to serve the proposed bill of exceptions was extended to June 3, 1960,

and that the attorney for the defendants received the transcript on May 31, 1960; that the attorney for the defendants was in his office June 2d and 3d, because he had personally telephoned him on other matters on both of these days, and that notice of appeal and undertaking was not received by the affiant until June 6, 1960. This was three days after the extended time for serving the bill of exceptions had expired. He further states that June 3d was on a Friday, the expiration date; June 4th and 5th were Saturday and Sunday; and June 6th was on a Monday.

The trial court under date of June 9, 1960, extended the time to settle the bill of exceptions to June 30, 1960.

Sec. 269.45 (2), Stats., provides:

"After the expiration of the specified period *or as extended by any previous order,* the court may in its discretion, for like cause, upon notice, extend the time where the failure to act was the result of excusable neglect; . . ." (Italics added.)

The power conferred upon a trial court by sec. 269.45 (2), Stats., extending time, being highly discretionary, this court will not disturb its determination except in such cases where it clearly appears that it has been abused.

The delay in ordering the transcript was something in excess of thirty days. Notice of entry of judgment was served on the defendants on the 5th day of January, 1960, the transcript was ordered by the defendants' counsel on February 9, 1960, about thirty-four days later. The trial court stated:

"It may be said that counsel had no right to rely upon the statement of the court reporter at that time, that is on May 31st, but it must be noted that counsel was in the trial of an important case at that time and that his own files and records were not available to him, and that inadvertently and excusably he relied upon the statement of the reporter who should know the facts of the situation.

"I know that this type of motion extending the bill of exceptions particularly after an expired time cannot be granted as a matter of grace, but must be granted either upon good cause shown or upon the basis of excusable neglect. I believe that the failure of . . . [defendants' attorney] to complete the bill of exceptions for the purpose of securing the signature of plaintiff's counsel on a stipulation, which is the accepted and usual method of settling a bill of exceptions, can be excused upon a reasonable basis. The time in between June 2d and June 9th was too close and I do not believe that it amounts to such carelessness or neglect of duty that can deprive him of having his conduct characterized as excusable neglect."

Upon the facts in this case we find no abuse of discretion on the part of the trial court in granting the second extension.

The next issue raised upon this appeal is whether. the trial court committed judicial error in changing the answers of the jury in the special verdict.

The verdict returned reads as follows:

| Question | Answer | Jurors Dissenting |
|---|---|---|
| 1. At the time of or immediately before the collision in question, was Noah Madenwaldt, in his manner of operating his automobile, negligent in respect to,— | | |
| (a) Lookout? | Yes. | |
| (b) A signal indicating his intention to make a left turn? | No. | |
| (c) Making a left turn? | No. | Alvin Brockmeyer |
| 2. If you answer "Yes" to any of the subdivisions of the first question, then answer the corresponding inquiries here following: Was such | | |

| Question | Answer | Jurors Dissenting |
|---|---|---|

negligence as you find a cause of the collision in respect to,—

(a) Lookout? — Yes.

(b) A signal indicating his intention to make a left turn? — ———

(c) Making a left turn? — ———

3. At the time of or immediately before the collision in question, was Richard Hupf, in his manner of operating his automobile, negligent in respect to,—

(a) Control and management? — Yes.

(b) Position of his automobile on the highway? — No. — Charles Toth Ted Berch

4. If you answer "Yes" to any of the subdivisions of the third question, then answer the corresponding inquiries here following: Was such negligence as you find a cause of the collision in respect to,—

(a) Control and management? — Yes.

(b) Position of his automobile on the highway? — ———

5. If by your answers to the foregoing questions you find that both Noah Madenwaldt and Richard Hupf were negligent, and that the negligence of each was a cause of the collision, then answer this question: What proportion of all of the negligence that contributed to produce the collision is attributable to,—

(a) Noah Madenwaldt? — 20 per cent.

(b) Richard Hupf? — 80 per cent.

The following questions as to damages must be answered by the jury

| Question | Answer | Jurors Dissenting |
|---|---|---|

regardless of how the first five questions have been answered:

6. At what sum do you assess the damages of Richard Hupf for,—

    (a) Medical and hospital expense?
(Answered by the Court upon agreement of parties.)     $1,247.84

    (b) Loss of wages?     2,009

    (c) Pain, suffering, and disability?     10,001

7. At what sum do you assess the damages of Noah Madenwaldt for,—

    (a) Medical and hospital expense?
(Answered by the Court upon agreement of parties.)     2,738.12

    (b) Loss of wages?     7,125

    (c) Pain, suffering, and disability?     20,000

8. At what sum do you assess the damages of Noah Madenwaldt by reason of the death of his wife, Delia Madenwaldt, for,—

    (a) Funeral expense of his wife?
(Answered by the Court upon agreement of parties.)     900

    (b) Loss of society and companionship?     5,000

    (c) Pecuniary loss?     10,000

The usual motions after verdict were made and the trial court denied defendants' motions and granted the plaintiff's motion in which the court changed the answer to question 3 (a) of the special verdict from "Yes" to "No," and struck

the jury's answer to question 4 (a) and the jury's answers to question 5 (a) and (b), as a matter of law on the ground that the finding of negligence as against the plaintiff Hupf as to control of his automobile is wholly without support in the testimony, and that the undisputed testimony as to the defendant Madenwaldt as to sufficient lookout makes the defendant Madenwaldt guilty of negligence as a matter of law with reference to the failure of lookout. The trial court entered judgment for the plaintiff against the defendants jointly and severally in the sum of $13,257.84.

In resolving this issue it is the duty of this court to determine whether there is any credible evidence which will support the jury's findings that Richard Hupf was negligent as to control and management and if he was, whether such negligence was causal.

The collision between the two automobiles occurred about noon Sunday, February 2, 1958, on U. S. Highway 8 about two miles west of Laona, in front of Reno's Tavern & Bowling Alley. The plaintiff Hupf was going east in a 1957 Chevrolet with guest passengers, Charles Russell, and one Thomas, who was killed. The defendant Madenwaldt was driving west in a 1950 Plymouth with guest passengers, his young son Freddy, and his wife, Delia, who was also killed.

The highway at the point of the accident was surfaced with black-top, 22 feet in width, and was clear of ice and snow. The highway was straight and level to the east as well as to the west. Reno's Tavern is located on the south side of the road. The tavern had two private roadway approaches to it, one on the west and one on the east.

Noah Madenwaldt testified that as he approached the east driveway of Reno's Tavern he was probably going between 15 and 20 miles per hour, that he turned on his direc-

tional lights about 100 feet before he met the eastbound car and 200 feet from the east end of the west driveway entering Reno's Tavern. He further testified that when the crash occurred he had not started to turn his car and had every intention of waiting for the oncoming car to let it go by. He stated that he was on the north side of the center line and the plaintiff's car was directly in front of him, and that when he saw the oncoming eastbound car driven by Hupf it was 300 to 350 feet away and it was on its own side of the road. Madenwaldt further testified that as far as he was concerned and from his observations the collision was head on. He further testified:

"*Q*. Were you going to make a left turn into Reno's Restaurant that noon as you approached that place, was that your intention? *A*. My intention was to go into Reno's. . . .

"*Q*. You intended to turn into Reno's? *A*. That is correct.

"*Q*. And you knew that before you got to Reno's? *A*. I did.

"*Q*. And why did you not attempt to turn into the east driveway, the first driveway you came to, as you proceeded west that day? *A*. It was generally our habit when we went out to Fechtner's [Reno's] for social calls that we enter in the back way and that entered into their kitchen.

"*Q*. So you went by the east entrance and you intended to make your turn somewhere in that west driveway, is that correct? *A*. That is correct."

The testimony of plaintiff Hupf was directly in conflict with that of Madenwaldt. His testimony is that he was traveling between 45 and 50 miles per hour just before he approached Reno's Tavern. He said Madenwaldt turned left in a flash and gave no signal, and that Madenwaldt was three fourths of the way across the center line and his right front bumper was facing him. He further testified that as he was approaching the tavern, two cars were approaching from the opposite direction, the second of which was the Madenwaldt car. He estimated that the approaching cars

were approximately 170 feet from each other and that the Madenwaldt car, being the second car, was approximately 170 feet behind the first car approaching him. He further testified that when he met the first car he had not reached Reno's Tavern entrance and as he approached Reno's Tavern from the west he did not have any intention of turning to the right or into the driveway leading into Reno's Tavern, his intention being to go straight ahead and home to Laona, and that is when Madenwaldt started making his turn in a flash. Hupf's testimony further discloses that Madenwaldt gave no signal and that Madenwaldt was in his own lane until he started to turn.

The testimony in this case reveals a factual situation and two separate, distinct versions as to how the accident occurred. The testimony of defendant Madenwaldt is that he turned on his directional lights—the testimony of the plaintiff Hupf is that no signal was given.

The jury could well have found that if Hupf had seen such flashing directional lights he should have slowed down his speed so as to have his car under such control that he could have avoided a collision if Madenwaldt did turn left into the path of his automobile. The jury could also have reasonably concluded that Hupf had the right to continue at his existing rate of speed on the assumption that Madenwaldt would not violate the law by turning left directly into Hupf's traffic lane.

The jury found Noah Madenwaldt causally negligent as to lookout and found no negligence as to signaling or making a left turn. It also found Richard Hupf negligent, and that such negligence was causal, as to control and management, but not as to his position of his automobile on the highway. The facts in this case presented a jury question which could not be resolved as a matter of law by the trial court. *Behringer v. State Farm Mut. Automobile Ins. Co.* (1959),

6 Wis. (2d) 595, 95 N. W. (2d) 249. In *Kuchenbecker v. Millhiser* (1959), 8 Wis. (2d) 414, 417, 98 N. W. (2d) 916, it is stated:

"It is a fundamental rule that if there is any credible evidence to support a finding of a jury the evidence in support thereof must be treated as undisputed, or if there is any credible evidence which, under any reasonable view, fairly admits of an inference that supports a finding of a jury, then neither the trial court nor the appellate court has authority to change the jury's answer or finding."

The final issue is whether the verdict of the jury is defective. The question as to Noah Madenwaldt's negligence was given in three parts, lookout, which the jury answered in the affirmative; a signal indicating intention to make a left turn, which it answered in the negative; making a left turn was answered in the negative. One juror, Alvin Brockmeyer, disagreed. There is no way for this court to determine from the verdict as to which of the subdivisions he disagreed with.

The court presented the following as to Richard Hupf's negligence: Control and management, and the jury answered this in the affirmative; the next subdivision was position of his automobile on the highway, which the jury answered in the negative. Two jurors disagreed—Charles Toth and Ted Berch. Likewise, the verdict fails to disclose the subdivisions of the question to which they disagreed.

The five-sixths verdict statute, sec. 270.25 (1), provides in part that, "If more than one question must be answered to arrive at a verdict on the same cause of action, the same five sixths of the jurors must agree on all such questions."

This court has held to have a good verdict the same 10 jurors must concur in the answers to all questions which are necessary to support a judgment. It is also necessary to have at least the same 10 jurors to agree on every question that it is necessary for them to consider in answering the question

of comparative negligence. The same 10 jurors must agree as to the items of causal negligence found, and the comparative effect of the causal negligence of the parties in producing the resulting damages.

The jury in this case apportioned the negligence at 80 per cent to Richard Hupf and 20 per cent to Noah Madenwaldt and unanimously agreed on the plaintiff's damages. There is no appeal on the question of damages.

The verdict is invalid because only nine of the jurors agreed to all of the findings of negligence and causation on which the comparison of negligence was based. *Fleischhacker v. State Farm Mut. Automobile Ins. Co.* (1956), 274 Wis. 215, 79 N. W. (2d) 817.

In the exercise of our discretionary power, pursuant to sec. 251.09, Stats., the case is remitted to the trial court for a new trial on all issues excepting damages.

The defendants-appellants having made no demand for a new trial and further not having complied with Supreme Court Rule 46, sec. 251.46, Stats., no costs are allowed.

*By the Court.*—Order affirmed. Judgment reversed, and cause remanded for a new trial on all issues excepting damages. No costs allowed.