EARLS v HERRICK

Docket No. 50430. Submitted March 6, 1981, at Detroit.—Decided July 8, 1981.

Betty Earls and her infant son, Raymond Earls, were injured when the automobile in which they were riding was struck by an automobile driven by Gary M. Herrick and owned by Eileen J. Reilly. Betty Earls, for herself and as next friend of Raymond Earls, brought an action for damages against Herrick and Reilly, who, in turn, brought a third-party action against the City of Detroit. The Wayne Circuit Court, Joseph J. Lozo, J., granted a directed verdict in favor of defendants Herrick and Reilly for the reason that the plaintiff failed to establish serious impairment of body function or serious permanent disfigurement. Betty Earls appeals, and Herrick and Reilly cross-appeal alleging that the directed verdict should have been granted on the basis that plaintiff failed to make out a prima facie case of negligence. *Held:*

1. A claim of appeal is to name and designate the parties in the same order as in the original proceedings. In this case, the claim of appeal named only Betty Earls. However, because her son lacked the capacity to sue, there was technically only one plaintiff in the case, and the failure to name Betty Earls in her capacity as next friend of her son is not a fatal defect as to the appeal of the action she brought on the son's behalf.

2. The evidence presented by the plaintiff was sufficient to

REFERENCES FOR POINTS IN HEADNOTES
[1] 59 Am Jur 2d, Parties § 15.
[2] 42 Am Jur 2d, Infants § 150.
    59 Am Jur 2d, Parties § 31.
[3] 42 Am Jur 2d, Infants § 171.
[4] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 225, 800.
[5] 7 Am Jur 2d (Rev), Automobile Insurance § 357.
[6] 61 Am Jur 2d (Rev), Physicians, Surgeons, and Other Healers § 354.
    Necessity and sufficiency of showing medical witness' familiarity with particular medical or surgical technique involved in suit. 46 ALR3d 275.
[7] 74 Am Jur 2d, Torts §§ 10, 11.

raise a question of fact for the jury as to defendant Herrick's negligence.

3. The testimony regarding the injury to Mrs. Earls was sufficient to raise a question of fact as to whether she suffered serious impairment of a body function.

4. The trial court utilized an incorrect standard in not allowing plaintiff's expert witness to testify as to the permanency of scars on both Betty and Raymond Earls. It is sufficient if a witness has expertise in a specialty by reason of training or experience; he need not be a practitioner of the specialty. In this case the testimony of the witness would have aided the jury in its determination of whether the scars constituted serious permanent disfigurement.

Reversed and remanded.

1. Appeal — Parties — Claim of Appeal — Court Rules.

A claim of appeal filed in the Court of Appeals shall name and designate the parties in the same order as in the original proceedings, adding the designation of appellant or appellee as appropriate (GCR 1963, 805[1]).

2. Infants — Actions — Court Rules.

An infant has no right to bring an action in his own name, but is required to be represented by an adult (GCR 1963, 201.5[1]).

3. Infants — Judgments.

Judgments against an infant where no guardian has been appointed are not void but are voidable.

4. Automobiles — Assured Clear Distance Rule — Statutes.

The rule requiring a motorist to drive in a manner which will permit a stop within the assured clear distance ahead applies to motorists approaching intersections (MCL 257.627[1]; MSA 9.2327[1]).

5. Negligence — Automobiles — Seriousness of Injuries — Jury Question.

The question of whether an injury constitutes a serious impairment of body function or serious permanent disfigurement for purposes of the automobile no-fault act is one of fact for the jury unless it can be said that, viewing the evidence in the light most favorable to the injured party, no reasonable jury could view the injuries as serious impairment or permanent disfigurement.

6. Witnesses — Expert Witnesses — Medical Experts.

A medical expert witness need not actually be a practitioner of

the specialty in question; it is sufficient if the witness has expertise by training or experience in the specialty.

7. TORTS — AVOIDABLE CONSEQUENCES — PLAINTIFF'S DUTY.
   A plaintiff in a tort action has a duty to take reasonable steps to avoid the harmful consequences of the initial tort; however, this rule does not apply where the steps which must be taken do not stand a high probability of being successful.

*Ripple, Chambers & Steiner, P.C.* (by *Edward B. McKay*), for plaintiff.

*Valenti, Winiemko & Bolger* (by *David L. Rosenthal*), for defendants.

Before: D. E. HOLBROOK, JR., P.J., and BRONSON and D. F. WALSH, JJ.

BRONSON, J. Plaintiff, Betty Earls, appeals by right from an order directing a verdict against her both individually and in her capacity as next friend of Raymond Earls in an automobile negligence action. The basis of the order was that neither Betty Earls' nor Raymond Earls' injuries satisfied the threshold requirement of "serious impairment of body function" or "permanent serious disfigurement" imposed by the no-fault act as a condition precedent to a finding of tort liability of defendants Herrick and Reilly. MCL 500.3135; MSA 24.13135. Herrick and Reilly, hereinafter defendants, cross-appeal, alleging that the trial court should have granted a directed verdict on the basis that plaintiff failed to make out a prima facie case of negligence.

Plaintiff filed suit on behalf of herself and her 10-month-old son in the Wayne County Circuit Court on May 25, 1976. The action arose out of a July 13, 1975, collision between an automobile in which plaintiff and her son were passengers and a vehicle driven by defendant Herrick which was

owned by defendant Reilly. Trial was conducted February 4-5, 1980.

Betty Earls testified that her husband, Terry, was proceeding east on Panama in the City of Detroit when he arrived at that street's intersection with Central. She further stated that Terry stopped the automobile, and both of them looked both ways down Central. They saw no cars coming in either direction. Thereafter, they proceeded through the intersection and when they had almost gotten across Central they were hit by defendants' automobile which was proceeding north on Central.

Gary Herrick, the driver of defendants' car, stated that he first saw plaintiff's car when it was at the corner of Panama and Central, and at this point the car was proceeding toward the intersection but had not yet reached Central. He further indicated the car plaintiff was traveling in did not stop. Mr. Herrick testified that the streets were wet on the night of the accident. He also testified that he was traveling 25 miles per hour, which was the legal speed limit. However, in a deposition taken in June, 1977, Mr. Herrick testified that his rate of speed was "probably around 30" miles per hour.

As to the injuries in dispute, Mrs. Earls sustained lacerations on her face and arm and also suffered a fractured left humerus. She remained in the hospital for approximately four days following the accident. Plaintiff testified that her arm was placed in a cast extending from just below her shoulder to her wrist. This cast remained on her arm for some six weeks. Mrs. Earls also required stitches for the lacerations on her arm and head.

Plaintiff testified that she had difficulty caring for her 10-month-old son, Raymond, as a result of

the cast. The cast interfered with her ability to diaper and feed Raymond. It was also difficult to wash dishes, cook, and clean. She dropped a lot of dishes. Mrs. Earls indicated that, three or four times since late 1975, she had experienced a sharp pain in her arm and had sought medical treatment for it. Plaintiff also has scars on her left arm which turn pinkish-red in hot weather and cause embarrassment. A scar on her forehead does not turn red.

On cross-examination, Mrs. Earls said she could not drive a car while the cast was on. However, she admitted that she was able to perform all of her household chores, but that the cast made it more difficult. She further stated that a doctor had told her that the scars were permanent. This doctor was not a plastic surgeon.

As to Raymond Earls, the baby was also scarred. All trial counsel gave their impressions about the scar's length. The smallest estimate was that the scar was about three-quarters of an inch long across the face and then downward another inch or so.

Further testimony will be set forth where relevant to specific issues raised on appeal.

The first problem we must resolve is who exactly is appealing. Defendants state that a claim of appeal was taken only as to Betty Earls, individually, and not in her capacity as next friend of Raymond Earls. Plaintiff's brief, however, is premised on the idea that the appeal is in respect to Betty Earls in both her individual capacity and as next friend of Raymond Earls. None of the parties actually address this issue but, rather, simply make conclusory statements concerning the scope of appeal. This problem arises because of plaintiff's attorney's entitlement of the notice of the claim of

appeal. This document simply lists Betty Earls as plaintiff-appellant without indicating her separate statuses in this case. GCR 1963, 805(1) requires that a claim of appeal filed in this Court shall name and designate the parties in the same order as in the original proceedings, except adding appellant or appellee as appropriate. Plaintiff's counsel did not correctly follow this rule. The effect of the failure to strictly comply with GCR 1963, 805(1) has never been addressed in Michigan.

On the facts of this case, we find that the entitlement was sufficient to preserve the appellate rights of plaintiff in both her individual capacity and as next friend of Raymond Earls. GCR 1963, 201.5(1) requires any infant or incompetent person to have his interests represented by an adult. The minor party has no right to bring an action in his own name. While judgments against an infant where no guardian has been appointed are not void, they are voidable. *DeGuzman v Wayne Circuit Judge,* 225 Mich 606, 610-611; 196 NW 523 (1923). Technically, there was only one plaintiff in this case, to-wit: Betty Earls, because her son lacked the capacity to sue. As such, we do not believe counsel's entitlement of the claim of appeal listing solely Betty Earls as plaintiff-appellant constitutes a fatal defect as to the action she brought on behalf of her son.

We will first address the issue, raised by defendants' cross-appeal, that plaintiff did not make out a prima facie case of negligence. While the evidence adduced by plaintiff was not overwhelming, it was sufficient to raise a jury question.

MCL 257.627(1); MSA 9.2327(1) provides:

"A person driving a vehicle on a highway shall drive at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard

to the traffic, surface, and width of the highway and of any other condition then existing. A person shall not drive a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead."

The assured clear distance rule applies to motorists approaching intersections. *Breker v Rosema,* 301 Mich 685; 4 NW2d 57 (1942), *Ortega v Lenderink,* 10 Mich App 190, 193; 159 NW2d 140 (1968), *aff'd in part* 382 Mich 210; 169 NW2d 467 (1969), *rev'd in part on other grounds* 382 Mich 218; 169 NW2d 470 (1969). In the instant case, Herrick admitted that the pavement was wet and that the intersection was obstructed except on Panama very close to where it came to Central. Betty Earls testified that when she looked down Central while stopped at Panama she saw no cars for two or three full blocks. The car she was riding in was subsequently hit by defendants' vehicle. From this testimony, if believed, the jury could have inferred that defendant Herrick was not paying sufficient attention to what was happening ahead and consequently ran into the Earls' vehicle.

Additionally, although Mr. Herrick stated at trial that he was traveling at 25 miles per hour, the legal speed limit, in his deposition testimony he indicated that his rate of speed was probably about 30 miles per hour. MCL 257.649(e); MSA 9.2349(e) provided at the time the accident occurred:

"The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

If the jury concluded Herrick was speeding, in conjunction with the testimony that the pave-

ments were wet and the intersection of Panama and Central was obstructed, it surely would be within the jury's right to conclude that he was negligent.[1] While defendants were not negligent as a matter of law, a fact question was raised. See *Rathburn v Riedel,* 291 Mich 652; 289 NW 285 (1939), *Clark v Naufel,* 328 Mich 249; 43 NW2d 839 (1950).[2]

We now turn to the question of whether the trial court correctly concluded that plaintiff failed to adduce sufficient evidence of "serious impairment of a body function" and "permanent serious disfigurement" as to her injuries and sufficient evidence to establish "permanent serious disfigurement" as to her son's injuries. Unless it can be said that, viewing the evidence in the light most favorable to plaintiff, no reasonable jury could view the injuries as constituting a serious impairment or a serious permanent disfigurement the question is one of ·fact for the jury. *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 477-481; 208 NW2d 469 (1973), *Watkins v City Cab Corp,* 97 Mich App 723; 296 NW2d 162

[1] If the jury concluded Herrick was speeding, his right to claim that he had the right-of-way pursuant to MCL 257.649(b); MSA 9.2349(b) would be lost.

[2] Particularly in light of the adoption of comparative negligence in *Placek v City of Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979). The number of cases in which a directed verdict on the question of negligence would be appropriate are few. It may well be that the driver of plaintiff's vehicle was negligent. However, on the record at hand, we certainly cannot say that the jury would not have the right to find defendants at least partially at fault in this accident. Even if defendants were found to be only 1% at fault, they would be liable for all of plaintiff's injuries. This Court has rejected the position that, in light of *Placek,* the wrongdoing of a given defendant must be assessed in relation to all wrongdoers. *Weeks v Feltner,* 99 Mich App 392, 395; 297 NW2d 678 (1980). While Terry Earls, the driver of the automobile in which Betty and Raymond were passengers, was added as a third-party defendant by order of the court dated January 11, 1980, he was never served in this cause. If Terry Earls was negligent, his negligence cannot be imputed to Betty and Raymond. *Jackson v Trogan,* 364 Mich 148; 110 NW2d 612 (1961).

(1980), *Abraham v Jackson,* 102 Mich App 567; 302 NW2d 235 (1980).

Dealing first with the serious impairment of a body function question, we find that the following testimony made this a jury question. Plaintiff stated that her arm was placed in a cast extending from shoulder to wrist for a period of six weeks following the accident. During this time span, plaintiff found it difficult to care for her son and to do household chores. The orthopedic surgeon who set the arm was of the opinion that plaintiff had complete loss of use of her upper arm while it remained in the cast. While it is true plaintiff stated on cross-examination that she could still care for her child and do her household chores with the cast on, she also indicated that this was possible only with increased difficulty. It was a question for the jury as to whether this added difficulty was severe enough to allow the conclusion that there had been a serious impairment of a body function.

Resolution of the second issue raised by plaintiff is connected with whether the trial court erred in granting a directed verdict on the question of "permanent serious disfigurement". The trial court concluded that John McCullough, M.D., a board certified orthopedic surgeon, was not qualified to give expert testimony on whether the scars Betty and Raymond Earls possessed were permanent. The court stated, "An orthopedic surgeon is certainly never qualified as a plastic surgeon".

The trial court applied an incorrect standard in assessing whether McCullough's deposition testimony should have been admitted at trial. The mere fact that McCullough was not certified as a plastic surgeon did not necessarily preclude his testimony as an expert. To be qualified as a medi-

cal expert, it is sufficient if the witness has expertise by training or experience in the specialty in question. The witness need not actually be a practitioner of the specialty. *Siirila v Barrios,* 398 Mich 576, 590-594; 248 NW2d 171 (1976), *Wilson v W A Foote Memorial Hospital,* 91 Mich App 90, 101-102; 284 NW2d 126 (1979), *lv to appeal on other grounds held in abeyance* 409 Mich 868 (1980).[3] We do not determine whether McCullough was or was not qualified, but on remand the trial court is to make this determination based on the correct standard.

There is also some suggestion in the trial court's ruling that it believed expert testimony would not aid the trier of fact in reaching its decision. See MRE 702. Dr. McCullough's deposition testimony contained two assertions material to this case. First, he indicated that once a scar was created it was permanent and could not be removed. Second, he stated that it was impossible to state with certainty whether plastic or reconstructive surgery could substantially reduce the noticeability of a scar.

The first assertion would obviously have aided the jury on the question of the permanency of the scars. The second assertion had the effect of rebutting an implication defense counsel made via his questioning of Mrs. Earls. On cross-examination, she was asked whether a plastic surgeon had ever told her that plastic surgery could not do any good in repairing her scars. She answered in the negative. Dr. McCullough's second assertion had the

___

[3] While *Siirila* and *Wilson* both deal with the issue of a doctor's competence to comment on the standard of care imposed outside his specialty, we see no indication that either decision is limited solely to testimony on the standard of care. In this case, the permanency of the scars suffered by Betty and Raymond Earls was in issue. It is possible that McCullough had sufficient expertise to comment on this issue, despite the fact that he was not a plastic surgeon.

effect of dispelling the implication that, had Mrs. Earls sought plastic surgery, she would have been informed that the noticeability of the scars could in all probability be diminished.

The underlying assumption of defendants' motion for a directed verdict on the permanent serious disfigurement question was that plaintiff had to submit to plastic surgery before the disfigurement could be called "permanent". However, plaintiff's expert's testimony would have been to the effect that any scar was permanent and that plastic surgery may or may not be able to lessen the noticeability of a given scar. Furthermore, plaintiff's expert would have indicated that plastic surgery could in fact make a scar more noticeable. If the doctor's deposition had been admitted into evidence, and had the jury accepted this testimony, it could have found the disfigurements permanent. Furthermore, even had plaintiff's expert not stated that any scar was permanent, in light of his testimony that it was impossible to say whether plastic surgery would be beneficial, assuming plaintiff's expert's qualifications, we would not require her to submit herself or her son to a reconstructive surgical procedure. This situation might be likened to a plaintiff's duty to take reasonable steps to avoid the harmful consequences of the initial tort. Restatement Torts, 2d, § 918, p 500. The avoidable consequences rule does not apply where the action which must be taken to lessen the severity of the harmful effects of the tort does not stand a high probability of being successful. Here, if McCullough's testimony had been taken into evidence, the jury could have found that submission to reconstructive surgery would have had a doubtful result. Restatement, *supra,* 503-504. See, also, *Clapham v Yanga,* 102

Mich App 47; 300 NW2d 727 (1980). If Dr. McCullough had been qualified as an expert by the trial court, his testimony would have aided the finder of fact on the question of the permanency of the scars.

As to the seriousness aspect of the disfigurement, it is difficult to review how the trial court found the scars not sufficiently serious since we do not have photographs of the people involved. Nonetheless, it seems to us that the testimonial descriptions of the facial scars created a fact question as to the seriousness of the scars. Almost any facial scar which is immediately noticeable might result in serious emotional effects for the individual who must bear the scar. Such a permanent facial scar might be found to be a serious disfigurement by a jury. Similarly, a jury might have found that the scars on Betty Earls' arm, which turned pinkish-red in hot weather and caused her embarrassment, constituted a serious disfigurement based on her testimony.

Reversed and remanded for trial. Costs to plaintiff.