KLANSECK v ANDERSON SALES & SERVICE, INC

Docket No. 64816. Submitted May 18, 1983, at Detroit.—Decided July 9, 1984. Leave to appeal applied for.

Stephen Klanseck purchased a Honda motorcycle from Anderson Sales and Service, Inc. Approximately three to four hours after he purchased it, he was injured as a result of an accident involving the motorcycle. Klanseck did not possess a motorcycle operator's endorsement on his driver's license. Klanseck and his wife brought suit against Anderson Sales and American Honda Motor Company, Inc., in Oakland Circuit Court. The court, Francis X. O'Brien, J., entered a judgment on a jury verdict for the plaintiffs against both defendants but reduced the damages because the jury also found Stephen Klanseck to be 60% negligent. The plaintiffs appealed, alleging that the trial court erred in (1) instructing the jury that it could infer negligence on the part of Stephen Klanseck because he was driving the motorcycle without the proper licensing endorsement, (2) instructing the jury that plaintiff Stephen Klanseck's violation of the basic speed law would permit the jury to infer that he was negligent, (3) instructing the jury that comparative negligence would be a defense to plaintiffs' breach of implied warranty theories; (4) instructing the jury that the same five jurors who agreed on liability also had to agree on damages, (5) instructing the jury that, if it found that Stephen Klanseck had failed to use ordinary care to minimize his damages, any portion of the damages which resulted from this failure should

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur 2d, Negligence §§ 315, 382.

[2, 6] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 429, 625 *et seq.*

Lack of proper automobile registration or operator's license as evidence of operator's negligence. 29 ALR2d 963.

[3] 76 Am Jur 2d, Trial §§ 1111, 1112.

[4] 22 Am Jur 2d, Damages §§ 38-40, 42.

Duty of injured person to minimize tort damages by medical or surgical treatment. 48 ALR2d 346.

[5] 63A Am Jur 2d, Products Liability § 963.

Applicability of comparative negligence doctrine to actions based on strict liability in tort. 9 ALR4th 633.

not be charged to the defendants, (6) dismissing plaintiffs' claim of breach of express warranty, and (7) in denying his request for an instruction to the jury on aggravation of a pre-existing mental condition. *Held:*

1. The trial court's instruction to the jury that it could infer negligence from Stephen Klanseck's failure to obtain a motorcycle endorsement was proper. Michigan has adopted the minority rule that a driver's operation of a motor vehicle without a license bears on the issue of that driver's negligence.

2. The trial court correctly instructed the jury that Stephen Klanseck's violation of the basic speed law would permit the jury to infer that he was negligent.

3. The trial court did not err in instructing the jury that comparative negligence would be a defense to the plaintiffs' breach of implied warranty theories.

4. The trial court did not err in instructing the jury that the same five jurors who agreed on liability also had to agree on damages.

5. The trial court did not err in instructing the jury that, if it found that Stephen Klanseck had failed to use ordinary care to minimize his damages, any portion of the damages which resulted from that failure should not be charged to the defendants. The court was justified in giving such an instruction because Stephen Klanseck refused to undergo diagnostic tests and failed to fully divulge his symptoms to the doctor.

6. The trial court did not err in dismissing the plaintiffs' claim of breach of an express warranty. Neither of the two exhibits which plaintiffs relied upon to prove that an express warranty existed amounted to an express warranty of a defect-free product. Furthermore, both defendants were found liable for a breach of an implied warranty, and submission of a theory of express warranty would not have made a difference in the finding of liability.

7. The trial court did not err in denying the plaintiffs' request for an instruction on aggravation of a pre-existing mental condition. There was no evidence presented that Stephen Klanseck had suffered a head trauma in the accident.

Affirmed.

T. M. BURNS, P.J., dissented. He believed that the trial court erred in admitting evidence of Stephen Klanseck's failure to obtain a proper motorcycle license. He believed that Stephen Klanseck's violation of the motorcycle operator's licensing statute was not in any way related to the accident, which was caused by a defect in the wheel of the motorcycle. Klanseck's

failure to obtain proper licensing to drive the motorcycle had no causal relation to the accident. He would reverse the trial court.

OPINION OF THE COURT

1. NEGLIGENCE — VIOLATION OF A STATUTE — INFERENCE OF NEGLIGENCE.

Three conditions must be met for a violation of a statute to give rise to an inference of negligence: (1) the statute must be intended to protect against the injury involved; (2) the injured party must be within the class intended to be protected by the statute; and (3) the evidence must be sufficient to support the conclusion that the statutory violation was a proximate cause of the occurrence.

2. LICENSES — MOTORCYCLE LICENSES — NEGLIGENCE.

The statute requiring a motorcycle operator to possess a motorcycle endorsement on his driver's license is intended to protect against accidents involving motorcycles driven by persons who have not been legally recognized as competent in their operation; negligence may be inferred from failure of a party to comply with the motorcycle license statute (MCL 257.312a, 257.312b; MSA 9.2012[1], 9.2012[2]).

3. JURY — VERDICTS — COURT RULES.

Five of the six jurors in a civil case must agree upon everything that is encompassed within the verdict including both liability and damages, or there is no verdict where a single cause of action is submitted for a general verdict (GCR 1963, 512.1).

4. DAMAGES — MITIGATION OF DAMAGES.

An injured party's duty to minimize damages includes the duty to seek and follow medical treatment which does not involve danger to life or extraordinary suffering and which stands a high probability of being successful.

5. NEGLIGENCE — COMPARATIVE NEGLIGENCE — PRODUCTS LIABILITY.

Comparative negligence may be asserted as a defense in all products liability actions based on any theory of recovery.

DISSENT BY T. M. BURNS, P.J.

6. LICENSES — MOTORCYCLE LICENSES — NEGLIGENCE — EVIDENCE.

*A motorcycle operator's violation of the statute requiring him to possess a motorcycle endorsement on his driver's license does not constitute negligence per se, and evidence of such failure to be properly licensed is not admissible to prove negligence.*

*Moore, Sills, Poling & Wooster, P.C.* (by *James M. Prahler*), for plaintiffs.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Thomas G. Herrmann*), for Anderson Sales & Service, Inc.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Jon Feikens*), for American Honda Motor Company, Inc.

Before: T. M. BURNS, P.J., and D. F. WALSH and C. W. SIMON,* JJ.

C. W. SIMON, J. Following a trial in the Oakland County Circuit Court, the jury determined that both defendants were liable on negligence and breach of implied warranty theories. Damages were assessed at $40,000, and plaintiff Stephen Klanseck[1] was found to be 60% negligent, resulting in a reduction of his recovery to $16,000. Plaintiffs now appeal as of right.

On May 27, 1976, plaintiff purchased a Honda G. L. 1000 motorcycle from Anderson Sales & Service. At the time of this purchase, plaintiff had only three hours experience with a motorcycle of this size and some ten hours of experience on a dirt bike which plaintiff described as "just a little toy".

Approximately three to four hours after plaintiff took delivery of the motorcycle, he was involved in an accident while travelling north on Telegraph Road toward his home in Flint. At this time, plaintiff was travelling at 55 miles per hour, which

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff Steven Klanseck sustained physical injuries arising out of the incident forming the basis of this appeal, and plaintiff Karen Klanseck brought a claim for loss of consortium. For purposes of this opinion, references to "plaintiff" refer to Steven Klanseck.

was in excess of the speed limit. Moreover, plaintiff did not possess a motorcycle operator's endorsement on his driver's license.

The accident occurred shortly after plaintiff noticed the motorcycle "sort of fishtailing", whereupon he removed his hand from the throttle and applied the front brake. The motorcycle started to slide; plaintiff hit the pavement and rolled across three lanes of traffic.

Plaintiff's wife, who was driving ahead of him in a car, stopped and transported plaintiff to St. Joseph's Hospital in Pontiac. Plaintiff received sutures in his left arm, was x-rayed, and released. Approximately two weeks later, a fracture of plaintiff's right wrist was diagnosed. Plaintiff also sought additional treatment to alleviate pain in his left arm and hand.

At the trial, plaintiff offered the expert testimony of O. Edward Kurt to establish his case. Mr. Kurt testified that he had discovered a short slit in the front tire tube of the motorcycle. He testified that the slit could well have been caused when the tube came into contact with the metal heads of the spokes on the front wheel rim of the motorcycle. According to Mr. Kurt, a protective rubber strip that would have prevented the slit from developing was not properly placed on the wheel rim.

The expert for defendant American Honda, Mr. Jameson, testified that he doubted that the spoke heads could create the slit found in the front tire tube. He further stated that he found no chafing in the area of the slit, which would be expected if, in fact, the tube was making contact with the spoke heads.

Other evidence will be set forth as is necessary to resolve the several issues raised by plaintiff on appeal.

Plaintiff first contends that the trial court erred in charging the jury that it could infer negligence on his part because he was driving the motorcycle without the proper licensing endorsement, MCL 257.312a; MSA 9.2012(1), and MCL 257.312b; MSA 9.2012(2), and since he was travelling in excess of the speed limit, MCL 257.627; MSA 9.2327. Plaintiff asserts that the claimed statutory violations do not permit an inference of negligence in this case under the Michigan Supreme Court's holding in *Zeni v Anderson,* 397 Mich 117, 138, fn 2; 243 NW2d 270 (1976). There the Court said that, for a statutory violation to give rise to an inference of negligence, three conditions must be met: (1) the statute must be intended to protect against the injury involved; (2) plaintiff must be within the class intended to be protected by the statute; and (3) the evidence must be sufficient to support the conclusion that the statutory violation was a proximate cause of the occurrence.

This Court's decision in *Turri v Bozek,* 79 Mich App 212; 261 NW2d 264 (1977), *rev'd on other grounds* 406 Mich 900; 276 NW2d 457 (1979),[2] is cited by both defendants as supporting the propriety of the court's instruction that the jury could infer negligence from the fact that plaintiff did not possess a motorcycle endorsement. In *Turri,* the plaintiff's motorcycle was involved in an accident with the defendant's camper. The court instructed the jury that plaintiff's violation of the motorcycle license statute by plaintiff constituted negligence per se, and the jury returned a verdict of no cause of action. On appeal, plaintiff asserted that the circuit court had erred reversibly in instructing

---

[2] *Turri* was reversed in light of the Michigan Supreme Court's adoption of comparative negligence in *Placek v City of Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979). Thus, plaintiff's negligence would not necessarily constitute a complete defense.

the jury that a violation of the motorcycle license statute would constitute negligence per se.[3] This Court disagreed, noting:

"1. The motorcycle license statute is intended to protect against accidents involving motorcycles driven by persons who have not been legally recognized as competent in their operation.

"2. Plaintiff is within the class of persons intended to be protected by the statute. Under the statute plaintiff should have passed an examination which included a driving test designed to assess his competency to drive a motorcycle.

"3. Plaintiff did not submit to such an examination and this violation could properly have been considered by the jury to be a proximate cause of the accident." *Id.*, pp 215-216.

The *Turri* decision adopts the minority rule in respect to whether negligence may or must be inferred where the operator of a motor vehicle or motorcycle is not licensed. The vast majority of courts have held that a party's lack of an operator's license is immaterial to the issue of negligence. See, Anno: *Lack of a proper automobile registration or operator's license as evidence of operator's negligence,* 29 ALR2d 963, § 5, p 970. If *Turri* were the only reported Michigan decision on this question, we might be persuaded to adopt the majority rule. However, the decision in *Parks v Pere Marquette R Co,* 315 Mich 38, 48-49; 23 NW2d 196 (1946), is clearly at odds with the

---

[3] Following the trial in *Turri, Zeni v Anderson,* 397 Mich 117; 243 NW2d 270 (1976), was decided in which the Michigan Supreme Court abandoned the view that violation of a statute constitutes negligence per se in favor of the rebuttable presumption of negligence rule now in effect. However, this change in Michigan law does not undercut the continuing vitality of the *Turri* holding that negligence may be inferred from the failure of a party to comply with the motorcycle license statute.

majority view. There, the plaintiff brought suit to recover damages for the death of his son in an automobile accident. The decedent owned the vehicle involved in the mishap. However, the vehicle was actually being driven at the time of the accident by an unlicensed minor with the decedent's permission. The Supreme Court determined that the jury had the right to consider that the driver of the decedent's vehicle was unlicensed, stating that it bore on the issue of the contributory negligence of the driver, which negligence, on the facts of the case, was to be imputed to the decedent. The Court specifically based its decision on the fact that an unlicensed driver who operates a motor vehicle does so in violation of statute requiring licensing. Given *Parks,* we believe the court's charge to the jurors properly informed them that they could infer negligence from plaintiff's failure to obtain a motorcycle endorsement.[4]

We also conclude that the trial court correctly

[4] In Vogan, *Torts: 1978 Annual Survey of Michigan Law,* 25 Wayne L Rev 673, 684 (1979), *Turri* is criticized as follows:

"The logical problem with *[Turri]* is that the licensing statute involved does not pass the threshold requirement for applicability; it says nothing about what the plaintiff should have done under the circumstances of the accident. The licensing law only prescribes procedures and prerequisites for obtaining a license. It simply has no bearing on the operation of motorcycles. The mistake in the court's analysis is that it ignored this preliminary issue and proceeded to analyze the statutory purpose and proximate cause aspects of the problem." (Footnote omitted.)

Mr. Vogan distinguishes *Parks* from *Turri* on the basis that *Parks* was arguably a case of negligent entrustment so that the decedent's knowlege of the operator's incompetence was relevant in assessing the decedent's fault. Mr. Vogan would limit *Parks* to its facts. However, to the extent that Mr. Vogan is correct in his assertion that the licensing law has no bearing on the operation of vehicles, neither does it have any bearing, in and of itself, as to whether one negligently entrusted a vehicle to an incompetent person. To the extent that *Turri* could result in the imposition of liability without fault (as Mr. Vogan fears), *Parks* allows this same possibility. Thus, we are not convinced that *Parks* can be persuasively distinguished from *Turri* as suggested by Mr. Vogan.

instructed the jury that plaintiff's violation of the basic speed law, MCL 257.627; MSA 9.2327, would permit the jury to infer that plaintiff was negligent. In *Resolute Ins Co v Marshall,* 350 Mich 218, 222; 86 NW2d 313 (1957), the Supreme Court flatly stated: "It is the rule that speed in excess of the statutory speed limit is negligence per se."[5]

Plaintiff next contends that the trial court erred in instructing the jury that comparative negligence would be a defense to plaintiff's breach of implied warranty theories. The Michigan Supreme Court recently held contrary to plaintiff's position. *Karl v Bryant Air Conditioning Co,* 416 Mich 558, 568-569; 331 NW2d 456 (1982).

Plaintiff next asserts that this case must be reversed because the trial court's supplemental instructions to the jury deprived him of his right to a jury of six members. During the course of deliberations, the jurors sent a note to the judge which indicated that five of them agreed on responsibility and asking whether the sixth juror should be allowed to participate in assessing damages. The trial court then proceeded to instruct the jury that the same five jurors who agreed on liability also had to agree on damages. The court did not indicate, however, that the juror who did not agree on responsibility could not participate in the deliberations on the issue of damages.

We first note that the transcript fails to reflect that the verdict was not unanimous. Following the completion of the reading of the verdict, the court asked the jurors as a group whether this was their verdict. The transcript fails to show that any juror answered in the negative. All counsel declined the

---

[5] In light of *Zeni, supra,* violation of the statutory speed limit would raise a rebuttable presumption of negligence and would not constitute negligence per se. See fn 3, *supra.*

opportunity to individually poll the jurors. Under these circumstances, we believe that this claim has not been properly preserved for appellate review. Nonetheless, we choose to use our discretionary powers to address this claim on the merits.

GCR 1963, 512.1, provides that "in civil cases, tried by six jurors, a verdict shall be received when five jurors agree". Although it is an issue of first impression in this state as to whether this rule requires the same five jurors who agreed on liability to agree on damages, this problem has been addressed in other states. The weight of authority requires that, where less than a unanimous jury is permitted, the same jurors who agreed on liability also agree on damages. The effect of GCR 1963, 512.1 in this situation is discussed in 2 Honigman & Hawkins, Michigan Court Rules Annotated (1983 Supp), p 167, as follows:

"Where a single cause of action is submitted for general verdict, five jurors must agree upon everything that is encompassed within the verdict—*i.e.,* both liability and damages—or there is no verdict. This conclusion is supported by decisions from several other jurisdictions having similar provisions for less than unanimous verdicts. See *Bernard v Seyopp Corp,* 11 AD2d 140; 202 NYS2d 707 (1960), *aff'd* 9 NYS2d 676; 212 NYS2d 412; 173 NE2d 235 (1961); *Clark v Strain,* 212 Or 357; 319 P2d 940 (1958); *Hupf v State Farm Mutual Ins Co,* 12 Wis 2d 176; 107 NW2d 185 (1961); *contra, Ward v Weekes,* 107 NJ Super 351; 258 A2d 379 (1969)."[6]

We adopt the majority view and decline to reverse on this basis.

Plaintiff next asserts that the trial court erred

[6] While the Honigman & Hawkins treatise is not binding on the courts, it is persuasive authority and has been cited frequently by the appellate courts. See, *e.g., Cleveland-Cliffs Iron Co v First State Ins Co,* 105 Mich App 487, 494, fn 2; 307 NW2d 78 (1981).

in instructing the jury that, if it found that plaintiff had failed to use ordinary care to minimize his damages, any portion of the damages which resulted from this failure should not be charged to defendants. Plaintiff asserts that this instruction misled the jury as there was no evidence from which the jurors could conclude that he had failed to mitigate his damages.

The duty to minimize damages includes the duty to seek and follow medical treatment which does not involve danger to life or extraordinary suffering, and which stands a high probability of being successful. See, *Inter alia: Kolbas v American Boston Mining Co,* 275 Mich 616, 621-622; 267 NW 751 (1936); *Poikanen v Thomas Furnace Co,* 226 Mich 614, 619-621; 198 NW 252 (1924); *Earls v Herrick,* 107 Mich App 657, 667-668; 309 NW2d 694 (1981).

In this case, the deposition testimony of Dr. Roat, who had treated plaintiff for his injuries, was presented to the jury. Dr. Roat indicated that plaintiff had refused to undergo certain diagnostic tests which he had recommended and which might well have enabled him to isolate the cause of back problems which plaintiff alleged resulted from the accident. Dr. Roat also stated that plaintiff had failed to inform him of all the symptoms he experienced as a consequence of the mishap until approximately a year after the occurrence. In our opinion, plaintiff's refusal to undergo diagnostic tests and his failure to fully divulge his symptoms to Dr. Roat justified the trial court's instruction on mitigation of damages.

Plaintiff next asserts that the trial court erred in dismissing his claim of breach of express warranty. We initially note that both defendants were found to be liable to plaintiff on, among others, his

breach of implied warranty claim. Thus, allowing the express warranty claim to be submitted to the jury would not have changed the outcome in this case. Had defendants also been found liable to plaintiff for breaching an express warranty, in light of *Karl v Bryant Air Conditioning,* 416 Mich 558; 331 NW2d 456 (1982), they would not have been more liable than had already been found. Although the Court in *Karl* was concerned with whether comparative negligence was a defense, in a products liability action, to a claim based upon an alleged breach of an implied warranty, the Court's opinion makes it clear that comparative negligence may be asserted as a defense in *all* products liability actions based on *any* theory of recovery. *Karl, supra,* pp 567-569. Thus, even if plaintiff was entitled to have this claim submitted to the jury, the failure to do so was clearly harmless. GCR 1963, 529.1.

In any event, we find that plaintiff unduly relies on two exhibits which he contends show that an express warranty existed. The first of these exhibits is a delivery checklist which makes no representations concerning the motorcycle's tires and wheels with the exception of indicating that the air pressure of the tires had been checked. This hardly constituted an express warranty that the tires and wheels of the motorcycle were defect free. Plaintiff also introduced into evidence a photocopy of a sales brochure pertaining to the type of Honda motorcycle which he purchased. However, this brochure had been obtained by plaintiff from a friend, not from defendants. Thus, even if this sales material could be said to include an express warranty that the tires and wheels of the motorcycle were defect free, this warranty ran to plaintiff's friend and not plaintiff. In any case, we are

convinced that neither exhibit amounted to an express warranty of defect-free tires and wheels under MCL 440.2313; MSA 19.2313.

Plaintiff's final claim on appeal is that the trial court erred in denying his request for an instruction on aggravation of a pre-existing mental condition. Plaintiff contends that evidence was introduced which showed that he suffered from a latent neurological brain disorder which resulted in an organic schizophrenia as a result of the accident. Plaintiff's expert psychiatrist, Dr. Joel Dreyer, did indeed testify that the accident may have aggravated a pre-existing mental condition. However, this testimony was based upon the assumption that plaintiff had experienced a serious blow to the head when the helmet he was wearing cracked after he fell from his motorcycle. Dr. Dreyer further testified that, if plaintiff had not suffered a head injury, the subsequent manifestation of schizophrenic symptoms would be unrelated to the accident. In fact, the testimony adduced at trial was uniform in showing that plaintiff had suffered no head trauma and that his helmet had not cracked. Since there was no evidence presented which connected the accident to plaintiff's mental condition apart from Dr. Dreyer's testimony, which was based on an assumption not supported by the evidence produced at trial, the court properly refused to give plaintiff's requested instruction on aggravation of a pre-existing condition. See, *e.g., Goggin v Peoples Transport Corp,* 327 Mich 404, 409; 41 NW2d 908 (1950).

Affirmed. Defendants may tax costs.

D. F. WALSH, J., concurred.

T. M. BURNS, P.J. *(dissenting).* I am unable to agree with the majority's finding that a violation

of the motorcycle license statute constitutes negligence per se. As stated in Anno: *Lack of proper automobile registration or operator's license as evidence of operator's negligence,* 29 ALR2d 963, 965-966:

"The overwhelming weight of authority * * * is to the effect that failure to have an operator's license on the part of the person operating a motor vehicle involved in an accident is not evidence of negligence, inasmuch as violation of the statute requiring such a license has no causal connection with the accident and is immaterial and incompetent in determining whether at the time of the accident in question the operator was guilty of negligent or contributory negligence in the operation of the vehicle."

This Court has recently found that evidence of a driver's failure to be properly licensed is inadmissible to prove negligence:

"Admission, over defense counsel's objection, of testimony by a police officer that defendant produced a false driver's license at the scene of the accident, and of the falsified license, was error. Contrary to the trial court's conclusion, this testimony and the license were not admissible as substantive evidence to show defendant was a poor driver and therefore more likely to be negligent, MRE 404. Nor, it is clear, was such extrinsic evidence admissible for purposes of impeachment. MRE 608(b)." *People v Grisham,* 125 Mich App 280, 286-287; 335 NW2d 680 (1983).

Likewise, I would hold that Mr. Klanseck's failure to have a license to drive a motorcycle is not evidence of negligence.

Even considering the older cases relied on by the majority, I would hold this evidence to be inadmissible. Specifically, the evidence was not sufficient to support the conclusion that the statutory viola-

tion was a proximate cause of the accident. *Zeni v Anderson,* 397 Mich 117, 138, fn 2; 243 NW2d 270 (1976). The accident was caused by a defect in the wheel of the motorcycle which allowed a spoke to puncture the inner tube. Plaintiff's failure to obtain proper licensing to drive the motorcycle had no causal relation to the accident. The majority's reliance on *Turri v Bozek,* 79 Mich App 212; 261 NW2d 264 (1977), *rev'd on other grounds* 406 Mich 900; 276 NW2d 457 (1979), is misplaced since in the instant case the accident was caused by a defect in the motor vehicle. *Ross v Alexander,* 74 Mich App 666; 254 NW2d 605 (1977), is closer to the facts of this case. In that case, this Court found that violation of a local ordinance relating to vehicular weight restrictions was not in any way related to the harm caused.

I believe that plaintiff's violation of the motorcycle operator's licensing statute was not in any way related to the accident in the instant case. Considering the fact that the jury found plaintiff 60% negligent, I feel that the trial court committed reversible error in admitting evidence on plaintiff's failure to obtain a proper license.

I would reverse the trial court.